**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Tina I., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:20-cv-50327 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tina I. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her social security benefits.[2] For the reasons set forth below, the Commissioner's decision is affirmed.

### I. Background

Plaintiff was diagnosed with multiple sclerosis ("MS") in 2004. R. 415. She has been receiving monthly Tysabri infusion treatments for the MS for over 10 years and she has been in a long-term remission on this therapy. R. 415-16, 497, 527. She also has struggled with depression and anxiety throughout her life, though she indicated that it worsened around 2011. R. 357, 376. Plaintiff's most recent job was working as a food service worker at Swedish American Hospital. R. 232. She quit her job in 2016 because her MS symptoms made it too physically exhausting. R. 66. In 2019, Plaintiff began going to school full-time to pursue her bachelor's degree. R. 53.

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

In April 2017, Plaintiff filed an application for supplemental security income alleging a disability beginning on January 15, 2016 because of MS, chronic pain and fatigue, depression, and anxiety. R. 83. She was 44 years old at the time she filed her application. *Id*. Her claim was denied initially and upon reconsideration. R. 28. Thereafter, she filed a written request for a hearing. *Id*.

Following the hearing, an administrative law judge ("ALJ") issued a decision in July 2019, finding that Plaintiff was not disabled. R. 28-41. The ALJ found that Plaintiff had the severe impairments of MS, major depressive disorder, generalized anxiety disorder, and obsessive-compulsive disorder. R. 30. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. *Id*. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work except that she could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; have occasional exposure to unprotected heights, vibration, and dangerous, heavy moving machinery; understand, remember, and carry out simple and routine tasks; and use judgment limited to simple-work related decisions. R. 32. The ALJ determined that Plaintiff could not perform her past relevant work, but there were other jobs that existed in significant numbers in the national economy that she could perform, including information clerk, office helper, and cashier II. R. 40.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge'

between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff argues that the ALJ: (1) made a Step Five determination that was not supported by substantial evidence; (2) erred in evaluating Plaintiff's subjective symptoms; and (3) improperly deferred to the state agency consultant's opinion.

## A. Step Five

The Commissioner has the burden at step five to show that work exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2); *see Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008). At the hearing, the ALJ heard testimony from a vocational expert ("VE"), Dr. Marni South, who testified that given Plaintiff's age, education, work experience, and RFC, there were three jobs available to her: an information clerk with 1,014,000 jobs nationally, an officer helper with 76,000 jobs nationally, and a cashier II with 3,500,000 jobs nationally. R. 76. The ALJ relied on the VE's testimony to conclude that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 40.

### 1. Job numbers

Plaintiff's argument with respect to the ALJ's step five determination is two-fold. First, Plaintiff argues that, for each of the three jobs the VE listed, the VE did not properly identify that those jobs exist in significant numbers in the national economy. Pl.'s Br. at 6-9, Dkt. 17. Specifically, she contends that the job numbers provided by the VE were not offered to the specific

hypothetical assessed by the ALJ but, rather, based on entire Bureau of Labor Statistics groupings, which means that those numbers encompassed jobs with higher skill and exertional levels than what was prescribed in the RFC. Pl.'s Rep. at 4, Dkt. 23.

The Commissioner argues, *inter alia*, that Plaintiff failed to preserve the issue for appeal because she did not challenge the job numbers at the hearing. Def.'s Br. at 5, Dkt. 20. This is consistent with Seventh Circuit opinions, which have on numerous occasions reinforced that a claimant who fails to question or raise an objection to the VE's testimony during the hearing forfeits that objection on appeal. *See Coyier v. Saul*, 860 Fed. App'x. 426, 427-28 (7th Cir. 2021) (unpublished) ("Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates."); *Collins v. Berryhill*, 743 Fed. App'x. 21, 26 (7th Cir. 2018) (unpublished) ("Collins forfeited [his challenge to the VE's testimony] by not objecting at the hearing."); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[Liskowitz] forfeited [her argument about the VE's sources] by failing to object to the VE's testimony during the hearing."); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004), *on reh'g*, 368 F.3d 691 (7th Cir. 2004) ("[B]ecause Barrett's lawyer did not question the basis for the [VE's] testimony, . . . any objection to it is forfeited."); *Donahue v. Barnhart*, 279 F.3d 441, 446–47 (7th Cir. 2002) ("When no one questions the [VE's] foundation or reasoning [at the hearing], an ALJ is entitled to accept the [VE's] conclusion. . . . Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late.").

Plaintiff does not directly address the Commissioner's argument but instead replies that "[a] finding . . . based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." Pl.'s Reply at 4-5, Dkt. 23. Notably, Plaintiff's citation to *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) does not address this issue at all,

and the other two citations actually support the Commissioner's argument. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("*When no one questions the vocational expert's foundation or reasoning*, an ALJ is entitled to accept the vocational expert's conclusion.") (emphasis added); *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004), *abrogated on other grounds by Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) ("*If the basis of the vocational expert's conclusions is questioned at the hearing* then the ALJ should make an inquiry to find out whether the purported expert's conclusions are reliable.") (internal quotations omitted) (emphasis added).

Neither Plaintiff nor her counsel objected to the VE's testimony about job numbers at the administrative hearing and, while counsel did cross-examine the VE, none of the questions were related to the job numbers that were provided. As a result, the ALJ was entitled to accept the VE's testimony. *See Rebekah C. v. Saul*, 20-2225, 2021 WL 3403539, at *3 (C.D. Ill. July 26, 2021) ("Because Plaintiff waived any objection to the VE's testimony, the ALJ properly accepted the VE's testimony as substantial evidence in his step five determination."); *Dahl v. Saul*, 18-C-676, 2019 WL 4239829, at *3 (E.D. Wis. Sept. 6, 2019) ("On the record as it stands – that is, with no questions asked that reveal any shortcoming in the [VE's] data or reasoning – the ALJ was entitled to reach the conclusion she did."). The Court declines to find that the ALJ's Step Five determination was unsupported by substantial evidence on this basis.

### 2. Reasoning levels

Plaintiff's other argument with respect to the ALJ's step five determination is that the jobs the VE listed require reasoning development levels[3] that conflict with the ALJ's conclusion that

---

[3] In the Dictionary of Occupational Titles ("DOT"), most occupations are evaluated using the General Educational Development ("GED") scale, which is composed of three divisions: reasoning development, mathematical development, and language development. *See Appendix C, § III*, Dictionary of Occupational Titles, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC. The GED scale includes six levels of reasoning development, ranging from level 1 (the least complex level) to level 6 (the most complex level). *Id*. The DOT assigns a reasoning level to most occupations. Social Security

she retained the capacity to perform simple and routine tasks. Pl.'s Br. at 7-9, Dkt. 17. Plaintiff

cites to language in the VE handbook that recognizes an apparent conflict[4] between the RFC to

perform simple, repetitive tasks, and the demands of level 3 reasoning. *Id*. at 8 (citing Social

Security Administration, *Vocational Expert Handbook*, 39 (Aug. 2017),

https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE )_Handbook-508.pdf).

Regarding the office helper position, Plaintiff states: "[T]his job is problematic as the DOT

describes the job with 'V' under work settings, defined as performing a variety of duties despite

the RFC of simple and routine tasks." *Id*. at 9. However, the Commissioner indicates in her brief

that the reasoning level for this position is two, and the Court independently confirmed this

information. Def.'s Br. at 4, Dkt. 20; *see* OALJ LAW LIBRARY, DOT, Clerical and Sales

Occupations 219.362-050 to 243.367-018, available at

https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02B. Yet, even after the

Commissioner brought this to Plaintiff's attention, Plaintiff did not argue in her reply brief that a

job with a reasoning level of two conflicts with the RFC assessed by the ALJ. As such, the Court

finds that there is no conflict between the reasoning level of the office helper position and the

ALJ's assessed RFC.

With respect to the cashier II position, Plaintiff points out that the DOT lists a reasoning

level of three. Pl.'s Br. at 9, Dkt. 17. A reasoning level of three means that the claimant must be

able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral,

---

Administration, *Vocational Expert Handbook*, 39 (Aug. 2017),
https://www.ssa.gov/appeals/public_experts/Vocational_Experts_(VE )_Handbook-508.pdf.
[4] Although Plaintiff does not elaborate on this in her opening or reply briefs, the term "apparent conflict"
invokes Social Security Ruling 00-4p, which states that, to the extent there is an apparent conflict between
the DOT and the VE's testimony, an ALJ is required to obtain an explanation for that conflict from the VE.
If a plaintiff does not identify any conflict at the administrative hearing, she would have to show on appeal
that the conflict was obvious enough that the ALJ should have picked up on it without any assistance. *See
Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020).

or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Appendix C, § III*, Dictionary of Occupational Titles, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC. As noted above, Plaintiff asserts that, according to the VE handbook, a reasoning level of three poses an apparent conflict with the RFC to perform simple and routine tasks. The Commissioner argues that this is not consistent with Seventh Circuit precedent and that the handbook is not binding on the Social Security Administration, nor does it overrule Seventh Circuit precedent. Def.'s Br. at 3-4, Dkt. 20. Plaintiff responds that the Seventh Circuit cases to which the Commissioner refers pre-date the publication of the 2017 VE handbook and, although it is not binding, courts can still consider its guidance. Pl.'s Reply at 3, Dkt. 23.

The Seventh Circuit case that the Commissioner relies on to support her argument that there is no apparent conflict is *Sawyer v. Colvin*, 512 Fed. App'x. 603 (7th Cir. 2013) (unpublished). There, the court held that restricting a claimant to "simple tasks" and performing a job that had a reasoning level of three did not pose an apparent conflict. *Id*. at 610-11; *see also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). The Commissioner is correct that the VE handbook is not binding on this Court. *See Medeiros v. Saul*, CV 19-11079-LTS, 2020 WL 4583871, at *10 (D. Mass. Aug. 10, 2020); *Leo v. Saul*, 1:18-CV-00977-LF, 2020 WL 888600, at *7 (D.N.M. Feb. 24, 2020). Rather, this Court is bound by Seventh Circuit pronouncements of law. Plaintiff attempts to invalidate *Sawyer* by pointing out that it pre-dates the publication of the VE handbook, but the Court is unconvinced by this argument because recently, several years after the publication of the handbook, the Seventh Circuit approvingly reiterated its holding in *Sawyer*. *See Surprise v. Saul,* 968 F.3d 658, 663 (7th Cir. 2020) ("In fact, we have gone as far as to say that there is no apparent conflict between a simple tasks limitations and level 3 reasoning.") (citing

7

*Sawyer*, 512 F. App'x at 610-11). Therefore, the Court finds that there is no apparent conflict between the reasoning level of the cashier II position and the ALJ's assessed RFC.

Finally, Plaintiff asserts that there is an apparent conflict between the level four reasoning assigned to the information clerk position and the ALJ's conclusion that she retained the capacity to perform simple and routine tasks. Pl.'s Br. at 7, Dkt. 17. Level four reasoning is defined as the ability to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists" and "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Appendix C*, Dictionary of Occupational Titles,

https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC. Examples of rational systems include bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation. *Id*. According to the DOT, an information clerk, 237–367–018:

> Provides travel information for bus or train patrons: Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and military personnel, using rate tables.

*Informational clerk*, Dictionary of Occupational Titles, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02B.

When a VE's testimony about available jobs appears to conflict with the dictionary, SSR 00-4p requires an ALJ to obtain a reasonable explanation for the conflict. *Givens v. Colvin,* No. 13-2000, 551 Fed. App'x 855, 863 (7th Cir. Dec. 17, 2013) (unpublished) (quoting *Overman,* 546 F.3d at 463). However, if a claimant does not object to the VE's testimony at the hearing, the conflict between that testimony and the dictionary must be so apparent or obvious that the ALJ

should have picked up on [it] without any assistance. *Terry,* 580 F.3d at 478 (quoting *Overman,* 546 F.3d at 463); *see Purcell v. Colvin*, 13 C 2057, 2014 WL 4403174, at *14 (N.D. Ill. Sept. 3, 2014). Because Plaintiff's attorney did not object to the VE's testimony about the information clerk position during the hearing, the question is whether there was such an obvious conflict between the VE's testimony and the DOT such that the ALJ should have picked up on it.[5]

The Seventh Circuit has explained that "[GED] levels focus on the worker's educational background, not on-the-job requirements." *Givens,* 551 Fed. App'x. at 863. As such, the Seventh Circuit has found that a conflict between the VE's testimony and the DOT is not obvious when (1) the abilities listed under the reasoning level are not relevant to the actual job duties of the position or (2) when the record does not demonstrate that the claimant could not perform a job at that reasoning level. *See Givens,* 551 Fed. App'x. at 862-63; *see also Vanhphenh S. v. Saul*, 18 CV 6121, 2021 WL 1315633, at *6 (N.D. Ill. Apr. 8, 2021); *Purcell*, 2014 WL 4403174, at *14-15.

Following the Seventh Circuit in *Givens*, the Court finds that there was no apparent conflict for both reasons. First, although not cited by either party, this Court is persuaded by the analysis in *Purcell v. Colvin*, 13 C 2057, 2014 WL 4403174 (N.D. Ill. Sept. 3, 2014). There, the court found that most of the abilities listed under a GED reasoning level four are not relevant to the actual job duties of an information clerk, and this Court agrees. *Id*. at *15. Second, it is not obvious from the evidence before the ALJ that Plaintiff would be incapable of performing the tasks required in a position with a reasoning level of four. In fact, the record reflects that Plaintiff has completed high school, earned an associate degree, and has been pursuing a bachelor's degree from a private

---

[5] With respect to the reasoning levels, the Commissioner argues that, because Plaintiff failed to offer an objection on this issue, she did not preserve the issue for challenge on appeal. Def.'s Br. at 4, Dkt. 20. However, as explained above, the Seventh Circuit has set out a standard for evaluating whether the ALJ should have picked up on a conflict even when the claimant does not object at the hearing.

university. R. 52-53. She also reported that she had been trying to learn Spanish as a hobby. R. 228; *see Hopper v. Astrue*, 09 C 7884, 2011 WL 1813007, at *9 (N.D. Ill. May 4, 2011) ("[T]he record suggests that Ms. Hopper does have the skills to perform jobs with a reasoning level of three or four: she completed high school and two years of college and has the cognitive capacity to follow simple instructions."). Nor does Plaintiff point to any evidence of record that suggests she is precluded from performing such tasks. *See Vanhphenh S.*, 2021 WL 1315633, at *6 ("Nor does Claimant offer any evidence in either her memorandum or reply that explains why she is in fact precluded from performing such tasks."); *Hopper*, 2011 WL 1813007, at *9 ("In the absence of some evidence that calls into question Ms. Hopper's reasoning or cognitive abilities, Ms. Hopper's argument fails.").

Moreover, other courts have found that a restriction to understand, remember, and carry out simple and routine tasks, like that found in Plaintiff's RFC, does not innately conflict with a reasoning level of four. *See Olson v. Berryhill*, 15-CV-172-WMC, 2017 WL 4217175, at *4 (W.D. Wis. Sept. 21, 2017) (affirming an ALJ decision in which the RFC limited the claimant to "understand, carryout and remember routine work with a [GED] reasoning level of 4 or less"); *Hopper*, 2011 WL 1813007, at *9 (affirming an ALJ decision in which the RFC limited the claimant to "simple, routine and repetitive tasks" and the jobs identified by the VE required a reasoning level of three or four).

Given the evidence and analysis above, the Court concludes that any potential conflict between the VE's testimony and the DOT was not so apparent that the ALJ should have picked up on it without any assistance. As such, the Court finds no error in the ALJ's reliance on the VE's testimony and the conclusion that Plaintiff could perform the information clerk position.

**B. Subjective Symptoms**

10

Plaintiff argues that the ALJ erred in evaluating her subjective symptoms. An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, the ALJ listed numerous reasons for finding that Plaintiff's subjective symptoms were not as severe as she alleged, including that: even when Plaintiff skipped a couple of her infusion treatments, she was still doing well; her MRIs during the relevant period showed no new changes; despite her allegations of totally disabling symptoms, none of her treating or examining physicians indicated she was disabled or had limitations greater than those determined in the ALJ's decision; she frequently denied new symptoms and often reported feeling well; her physical examinations were essentially normal; despite her perceived decrease in mental abilities, her mental status examinations were normal; and her physicians consistently reported a normal gait. R. 34, 35, 37-39. Plaintiff does not contest all of the bases used by the ALJ to support the symptoms evaluation; in fact, the ALJ includes mostly sound reasons supported by the record to discount Plaintiff's allegations. With respect to the ALJ's bases that Plaintiff does contest, the Court will address each, as set forth below.

### 1. Daily activities

11

Plaintiff argues that the ALJ inappropriately equated the ability to attend school part-time[6] and go to counseling with the ability to do work. Pl.'s Br. at 10, Dkt. 17. Plaintiff asserts that she only attends two classes three days a week, her classes were slipping due to absenteeism, she sleeps on her days off, the only meals she makes are her children's school lunches, and her counseling sessions lasted only two hours. *Id*. The Commissioner responds that the ALJ did not equate Plaintiff's daily activities with her ability to work, but rather pointed out that her most limiting claims were belied by an active lifestyle. Def.'s Br. at 8, Dkt. 20. The Commissioner also asserts that, contrary to Plaintiff's argument, the ALJ did consider the limitations associated with her daily activities. *Id*.

The Seventh Circuit has stated that a claimant's daily activities are a factor that "may be used to discredit a claimant's testimony." *Cullinan*, 878 F.3d at 603. To that end, the ALJ considered that Plaintiff was going to school full-time, attending counseling two to four times a week, taking her children to school, making lunches for her children before school, cooking dinner for her family, and attending her children's soccer games and track meets. R. 33-34, 38. With respect to Plaintiff's alleged limitations, the ALJ did consider Plaintiff's testimony that she had "down days" to recover after a day at school but found that this allegation was not corroborated in the record. R. 33. Despite Plaintiff's assertions that her partner does the cooking, the ALJ stated that Plaintiff also does the cooking on her non-school days, R. 34, and the record clearly supports that she has been doing the cooking for her family throughout the relevant period. *See* R. 61, 225, 242, 262, 264. After all of these considerations, the ALJ concluded that Plaintiff's "reports of daily functioning certainly seems [sic] far greater than what one might expect for a totally disabled individual." R. 34. As such, the ALJ properly evaluated Plaintiff's daily activities and found that

---

[6] Plaintiff testified that she was going to school part-time when she was earning her associate's degree, but at the time of the hearing she was attending school full-time to pursue her bachelor's degree. R. 52-53.

they discredited her testimony. Therefore, the Court finds the ALJ's consideration of Plaintiff's daily activities is supported by substantial evidence.

### 2. Fatigue and rest

Plaintiff argues that the ALJ failed to consider her side effects of fatigue and needing to rest in the context of this case. Pl.'s Br. at 11, Dkt. 17. The Commissioner argues that the ALJ did expressly consider such testimony; the ALJ simply chose not to accept Plaintiff's testimony wholesale and was not required to do so. Def.'s Br. at 8-9, Dkt. 20.

Contrary to Plaintiff's argument, the ALJ did expressly consider her allegations of fatigue and needing to rest. The ALJ discussed Plaintiff's testimony that she has a "down day" after a day of school in order to recover from the exhaustion, her complaints of fatigue while walking, her assertion that she sometimes needs to rest for a certain period of time, and her testimony about fatigue as a possible side effect of her medication. R. 33-34. However, as the Commissioner noted, an ALJ is not required to accept a claimant's testimony if it is not consistent with the other evidence. *Elder v. Berryhill*, 774 Fed. App'x. 980, 983 (7th Cir. 2019) (unpublished) ("[A]n ALJ may discount an applicant's testimony if . . . other evidence in the record provides a basis for doing so.").

Further, in her written opinion, the ALJ highlights several pieces of evidence in the record that provided a basis for discounting Plaintiff's testimony about her fatigue and needing to rest. With respect to the testimony about needing a "down day," the ALJ noted that this was not reported or corroborated in the treatment notes. R. 33. Regarding her complaints of fatigue while walking, the ALJ stated that Plaintiff also had denied problems with walking. *Id*. In terms of medication side effects, the ALJ highlighted that Plaintiff testified to having "a little bit of fatigue." R. 34. The ALJ also discussed the evidence throughout the record that Plaintiff had a normal gait without a

need for an assistive device and the records reflecting Plaintiff's contention that exercise helped her pain management. R. 36, 38. In short, the ALJ properly considered the record evidence and chose to discount Plaintiff's testimony as a result. For these reasons, the ALJ's assessment of Plaintiff's allegations about fatigue is supported by substantial evidence.

### 3. Falls

The ALJ noted that, "[t]hough it is not documented in the treatment notes, the claimant contends that she has fallen 5-6 times in the last couple years." R. 35. Plaintiff argues that, contrary to the ALJ's finding, "one record does reference sensory loss and ataxia." Pl.'s Br. at 11, Dkt. 17. The Commissioner responds that Plaintiff's argument effectively makes the ALJ's point: there was only one reference to sensory loss despite her many examinations where such symptoms were not present. Def.'s Br. at 9, Dkt. 20.

Notably, Plaintiff does not argue that the ALJ erred in finding that falls were not documented in the record. Rather, she points to a single set of treatment notes, which does not support her argument, either, as it indicates that the sensory examination of her legs was completely normal and makes no mention of ataxia. R. 499. Additionally, the ALJ acknowledged Plaintiff's testimony that she had told her neurologist about her leg pain and spasticity. However, the ALJ pointed out that Plaintiff's physical examinations were essentially normal but for diminished sensation for vibration in one of her arms. R. 35. In other words, treatment notes reflected no sensory issues, including spasticity, in Plaintiff's legs throughout the relevant period. *See* R. 366, 417-18, 447, 499, 530-31. The Court finds that the ALJ properly evaluated Plaintiff's testimony along with the record evidence. Therefore, the ALJ's assessment of Plaintiff's alleged falls is supported by substantial evidence.

### 4. Vision loss

In her decision, the ALJ wrote: "The claimant also alleged having . . . vision loss but the treatment notes do not appear to suggest that she complained of these issues or was evaluated for these complaints during the period at issue." R. 38. Plaintiff argues that the ALJ's statement that there is no evidence of complaints of vision loss is incorrect and points to one treatment note in the record. Pl.'s Br. at 11, Dkt. 17. The Commissioner argues it is telling that Plaintiff points to just one reference in the record despite her many examinations where such symptoms were not present. Def.'s Br. at 9, Dkt. 20.

The note that Plaintiff cites is one that appears in many of the treatment notes from her neurologist, and it states that Plaintiff "[n]oticed [MS] symptoms 5 years prior" to her diagnosis in 2004, including "decreased vision in both eyes." R. 496; *see also* 415, 420, 444. Contrary to Plaintiff's argument, this is consistent with the ALJ's assessment. This statement in the treatment notes indicates that the vision issues were one of the symptoms she identified prior to her diagnosis in 2004; it does not suggest that she was actively complaining of vision issues at her neurology appointments. Further, the ALJ is correct that there is nothing in the record to show that she was ever evaluated for vision issues during the relevant period. Rather, treatment notes (including from Plaintiff's neurologist) demonstrate that Plaintiff had normal vision throughout the period at issue. R. 335-36, 417, 421, 445, 459, 498, 528. As such, the Court concludes that the ALJ's assessment of Plaintiff's alleged vision loss is supported by substantial evidence.

### 5. Obesity

Plaintiff also argues that neither the ALJ nor the state agency doctors considered her obesity and the aggregate effect of her issues. Pl.'s Br. at 11-12, Dkt. 17. The Commissioner argues that Plaintiff does not attempt to show how she was further limited by her obesity and, further, that she is at the lowest end of the obesity spectrum. Def.'s Br. at 9, Dkt. 20.

The Court finds that, although it is true that the ALJ and agency doctors did not consider Plaintiff's obesity, the oversight was harmless. The Seventh Circuit has held that failure to explicitly consider a plaintiff's obesity is harmless if the plaintiff did not explain how his obesity hampers her ability to work. *See Rennaker v. Saul*, 820 F. App'x 474, 481 (7th Cir. 2020); *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015). Plaintiff's initial claim for disability did not include obesity and she points to nothing in the record to support her theory that her obesity would exacerbate her alleged symptoms of sensory loss and ataxia. According to the record, she did not seek treatment for obesity, report any limiting effects of obesity, or testify that obesity affects her in any way. *See Rennaker*, 820 F. App'x at 481. As a result, any consideration of obesity by the ALJ would have been speculative and the ALJ's failure to consider Plaintiff's obesity does not warrant a remand. *See Mark N. v. Saul*, 19 CV 50261, 2021 WL 1222873, at *5 (N.D. Ill. Apr. 1, 2021).

## C. State agency consultants

Finally, Plaintiff argues that the ALJ deferred greatly to the state agency opinions on her mental health even though the opinions were crafted in September 2017, prior to much of her mental health treatment. Pl.'s Br. at 12-13, Dkt. 17. She acknowledges the Seventh Circuit case law stating that not all evidence following an agency doctor's opinion necessitates a remand, but she contends that there is evidence[7] in the record that changed the picture so much that the ALJ

---

[7] The specific pieces of evidence Plaintiff references in her brief are: medication adjustments including paroxetine being increased; a GAF score of 40; notes about struggling with maintaining her thought process; notation of her depression being "somewhat" controlled; and a post-decision RFC by her counselor. *Id*. at 12. Plaintiff also cites to several places in the record, which include: the mental RFC questionnaire from her counselor dated either April or August 2019, R. 16-23; handwritten notes from Plaintiff's previous counselor in 2017, R. 369-75; treatment notes from Aspen Counseling between July 2017 and January 2018, R. 376-85; treatment notes from Beloit Health System dated April 2018, R. 394-407; treatment notes from Aspen Counseling between July 2017 and July 2019, R. 465-80; and treatment notes from Rosecrance between September 2018 and February 2019, R. 541-650.

erred by continuing to rely on outdated assessments. *Id*. (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). The Commissioner argues that the later evidence cited by Plaintiff did not "change the picture," but rather corroborated the existence and symptoms of previously considered conditions. Def.'s Br. at 9-10, Dkt. 20.

It is true that the Seventh Circuit has stated that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). However, "if an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 Fed. App'x. 477, 481 (7th Cir. 2017) (unpublished) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)). As such, the Seventh Circuit has stated that the claimant must provide evidence and explain how the evidence undermines the agency doctor's opinion. *Keys*, 679 Fed. App'x. at 481. If the claimant fails to do so, it is not error for the ALJ to rely on the opinion. *Id*.

As an initial matter, contrary to Plaintiff's characterization, the reconsideration level state agency opinions on which the ALJ relies were issued in March 2018, not September 2017. Yet some of Plaintiff's references and citations to the record are from before March 2018 and, so, are records that the reconsideration level agency doctor would have considered in their assessment. *See* R. 369-85 (including discussion of paroxetine dosage being increased), 465-72. The Court will proceed to evaluate the remaining records cited by Plaintiff that came after the March 2018 opinion to determine whether they changed the picture enough that the Court should find the ALJ erred in relying on those outdated assessments.

### 1. Mental RFC questionnaire

Plaintiff's first citation to evidence that "changed the picture" is a mental RFC questionnaire completed by her counselor.[8] *See* R. 16-23. Plaintiff refers to this in her brief as a "post-decision RFC by her counselor supportive of disability." Pl.'s Br. at 12, Dkt. 17. However, Plaintiff does not explain how this "post-decision" evidence is relevant here. At the hearing on April 8, 2019, Plaintiff's counsel had requested that the ALJ leave the record open for an additional 14 days to get outstanding records from State Line Counseling services admitted into the record, and the ALJ granted this request. R. 50. However, Plaintiff failed to submit any documents during the period set by the ALJ. Nor does she ask this Court to find good cause for failing to incorporate such evidence into the record. *See* 42 U.S.C. § 405(g); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). As such, the "post-decision RFC" questionnaire cannot provide a basis for remand.

### 2. Beloit Health System notes

One of Plaintiff's citations is to a set of treatment notes from the Beloit Health System from April 2018. R. 394-407. The Commissioner contends that these records offer nothing to bolster Plaintiff's argument and she does not explain why this evidence "changed the picture." Def.'s Br. at 10, Dkt. 20. In looking through these documents, the Court finds nothing even related to mental health. As such, the Court concludes that this evidence does not necessitate a remand.

### 3. Aspen Counseling notes

---

[8] The date on the questionnaire appears to indicate it was filled out on April 26, 2019. *See* R. 23. However, there is not a consensus about this date. In the Appeals Council's denial of Plaintiff's request for review, they state that the questionnaire is dated August 26, 2019. *See* R. 2. Confusingly, in the background section of Plaintiff's opening brief, she states that this questionnaire is dated April 26, 2019, but later in the brief refers to the questionnaire as being "post-decision," which means it would have been completed after July 2019. *See* Pl.'s Br. at 2, 12, Dkt. 17; R. 25. Although it is not clear which date is accurate, it is clear that the questionnaire was filled out after the period in which the ALJ had left the administrative record open and that Plaintiff submitted it to the Appeals Council with her request for review of the ALJ's decision. *See id.* at 2.

Another citation Plaintiff makes is to a set of treatment notes from Aspen Counseling between May 2018 and January 2019. R. 473-80. The May 2018 notes indicate that Plaintiff was experiencing depressive symptoms, R. 473, and by the end of January 2019, she reported feeling frustrated but "okay," R. 479. The counselor noted that her mood was not as bad as in the past and her motivation seemed okay, and Plaintiff reported sleeping and eating well. *Id*. The question is whether these treatment notes reveal any dramatic changes from the earlier evidence considered by the agency doctor. The earlier evidence that was considered by the agency doctor, specifically in the few months prior to the reconsideration level evaluation, shows that Plaintiff reported feeling much more depressed, her counselor observed a flat affect with constricted range and intensity, and her medication for depression and anxiety was increased. R. 380. In other words, comparing the post-reconsideration level opinions with the earlier evidence tends to indicate that Plaintiff's mental health had improved to some degree after the reconsideration level determination. As such, the Court concludes that the evidence did not constitute a dramatic change from the earlier evidence, and the ALJ was justified in relying on the opinion.

### 4. "Somewhat controlled" depression

One of the specific pieces of evidence that Plaintiff refers to is the notation that her depression was only "somewhat controlled." R. 498. The Court acknowledges that the record reflects that Plaintiff's neurologist had been making such notes since September 2017 until the most recent treatment note in January 2019. R. 416, 421, 498, 528. Because the neurologist had been making the exact same note for years, Plaintiff cannot say that this "changed the picture" at all. The Court concludes that this evidence does not necessitate a remand.

### 5. GAF score

19

Plaintiff specifically references her GAF score of 40 as evidence that the state agency doctor's opinion was outdated. Pl.'s Br. at 12, Dkt. 17. She also references this score in the background section of her opening brief and again in her reply brief. *See id*. at 2; Pl.'s Reply at 7, Dkt. 23. However, in all three places where Plaintiff references the GAF score, the citations that follow do not reflect that information. Moreover, the Court was unable to find a note in the record about any sort of GAF score. As a result, the Court cannot find that this alleged evidence would justify a remand.

### 6. Rosecrance notes

Plaintiff's final citation is to her substance abuse treatment notes from Rosecrance between September 2018 and February 2019. R. 541-650. In September 2018, Plaintiff was involved in substance abuse treatment at Rosecrance and did indicate that she was struggling with maintaining her thought process. R. 541-42. But, by the time she was discharged in October 2018, she reported "feeling good," was eating and sleeping well, and was observed to have a bright affect. R. 588. In November 2018 Plaintiff experienced a relapse, R. 598, but by January 2019, she was noted as demonstrating application of her recovery skills and was recommended to step down to outpatient treatment care groups meeting just once weekly. R. 603. All of the treatment notes in the following month indicated that Plaintiff was doing well and continued to progress. R. 606, 647, 649. As a result, the Court concludes that the records from Rosecrance following the reconsideration level opinions do not "change the picture" so much that the Court can conclude that the ALJ erred in relying on the Agency opinion from 2018. The ALJ was justified in relying on the opinion.

For all of the reasons discussed above, the Court finds that none of the evidence cited by Plaintiff would have "changed the picture so much" that a remand is warranted.

### IV. Conclusion

20

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: January 7, 2022                          By:

                                                    Lisa A. Jensen
                                                    United States Magistrate Judge